Argument not to exceed 15 minutes per side. Mr. Ewing, you may proceed for the appellant. Thank you. Good afternoon and may it please the court. James Ewing for the United States. I'd like to reserve three minutes for rebuttal. Through fraud, the defendant in this case diverted every dollar of the $11.8 million in government contract payments away from the intended class of recipients, disabled veteran business owners, to an unintended recipient, his company CA Services. And it's this diversion of taxpayer money away from the government's targeted group that is in the heartland of the government benefit rule. And this court should therefore reverse the district court and find that the loss amount for guidelines purposes was the full $11.8 million. Isn't the same thing true for procurement fraud? In other words, everything you just said would be true for procurement fraud. So you procure a contract through fraud to build this building and every dime was procured by fraud. And yet we have a specific provision for procurement fraud where you account for offset of costs, etc. Your Honor, the reason that this is different from garden variety procurement fraud is because Congress has intentionally set up a program to give a specific group of bidders a leg up in the contracting process. In this case, disabled veterans who are disabled in the service of their country who own small businesses. So that really gets you out of the garden variety procurement fraud where the government is simply, for example, contracting to have a building built. They contract to have a building built, they give the bid to the lowest responsible bidder, and if that person defrauds the government, then it's a loss to the government. But you don't have this separate diversionary aspect that frustrates Congress's intent to the point where the group that Congress has targeted is no longer getting the benefit that Congress intended for them to receive. Let me ask the question this way. I think it's a difficult problem, so I don't want you to think I think it's easy. But let's just say for the sake of argument, you lose given the way it's written, background principles, etc. Why should I be that worried about this big gap in enforcement sentencing power? I would think it's a pretty easy argument for an AUSA to get up there and say, you know, the guidelines don't really account for this. We end up treating these cases just like fraud procurement cases. And as a result, the guidelines quite under represents an appropriate range. And you should always go up and this kind of thing, because it really is outrageous to steal a contract from the very people Congress wanted to get it. So why why should I be worried about any problems resulting? It seems like it's an incredibly easy argument to make. And we'll actually have most district court judges will be quite outraged at what someone does along these lines. Your Honor, I guess the response to that is the overall intent of the guidelines is to be a proxy for the seriousness of the fraud. Now, again, again, talking about 35, 53 factors and certainly, you know, after Booker, the guidelines are not mandatory. And AUSA could certainly make the argument that you just laid out. I would point out here, however, that the district court gave a guideline sentence, which in this instance was eight to 14 months. And the reason I point to it's a Fifth Circuit case in Austin that talks about the guidelines being a proxy for the seriousness of the fraud. If the fraud in these sorts of cases is zero because the government at the end of the day got a building, that is a serious mis under representation of the seriousness of this fraud. It will not have the proper deterrent effect. A lot of times you'll be in a probationary sentence guideline range. It'll be difficult to have to have folks even want to pursue these cases and investigate them in the first place. So that it is it is a big deal for and again, we would say that that is it's kind of plays into why this is a better fit for the government benefit rule than it is for the general rule. Because, again, you're talking about diverting. It's the diversion of the benefits away from the targeted class. What do you do with even if it is under the government benefit rule, what's wrong with the Third Circuit approach that still uses E to credit against the loss? Because the government benefit rules and subsection F, which starts notwithstanding subdivision A. So that would suggest that it's only a carve out to the general determination of loss, not a carve out to the subdivision E credits against loss. Right. You're referring to the Third Circuit's opinion in Nagel and kind of a couple of responses to that one. If you look at the kind of the structure of 3A through E, which is 3A, of course, is the general rule. And the general rule is loss is the greater of the actual or intended loss. And that is tagged largely to pecuniary harm. Then if you look at the structure of A through E, it's kind of telling the district court how to get to that, how to get to the general rule, how to get to the answer. Talks about definitions of actual loss, intended loss, pecuniary harm, gain, estimation of loss, exclusions from loss. Then you get to 3F and what 3F is laying out is, again, going back to this Austin concept that the reason the purpose for the guidelines is to measure the severity of the fraud. These are situations where pecuniary harm is not the right yardstick. Right. Pecuniary harm is not the right way to measure the fraud. I'm not understanding your answer. Judge Murphy says, look it, F says notwithstanding A, credits against loss is an E. What is the textual answer? What's the textual answer? Not policy. Okay. Right. So the textual answer is 3E1 does not modify 3F2. Because if you look at it from 3A through 3E, those are telling you how to get to the general rule. 3F starts with the specific rules, with special rules, and we would point specifically to 3F5, which we also raised as an alternative argument here, where 3F5 says there is no offset. So under Mr. Kaczorowski's analysis, you would have a situation where you've got these two application notes at loggerheads with each other, where 3E1 says you get an offset, 3F5 says you absolutely don't. Doesn't F5, though, harm your F2 argument because it shows that the Sentencing Commission knows how to ban offsets when it wants to, and it didn't ban offsets in 2. In fact, you could arguably read the rest of 2 as suggesting an offset is necessary because it suggests you subtract the $50 of appropriately gained food stamps. Your Honor, it did not need to in 3F2, and here's why. Because 3F2 talks about diverting funds from its intended recipients to unintended recipients. So once you divert here those $11.8 million, even if you end up building the building, then you've still diverted the funds. It makes sense that there would be no offset in this scenario because Kaczorowski's company never should have done the work in the first place. I have a second way to answer Judge Murphy's question, if I may. That is, even if you disagree and you think that 3E1 does, in fact, modify 3F2, Kaczorowski would still not be entitled to an offset here for a couple of reasons. 3E1 talks about goods or services provided to the victim prior to the harm being determined. Well, the government would present there's 2 victims here, really. There's the service disabled veteran program company, the actual one that didn't get the contract. Those people got $0 from Kaczorowski, so there's nothing to offset. The second victim is the VA set-aside program that Congress funded to provide service disabled veterans with a leg up. $11.8 million floated out of that program and is gone forever. We talk about restitution, and on the one instance, we conceded in the district court that restitution would be zero. But the 2 victims in this case, the VA set-aside program, absent another act of Congress, that $11.8 million is completely gone and it was not provided to the service disabled veterans as Congress intended, and the service disabled vet didn't get anything either. We think 3E1 does not modify 3F2, but even if you disagree with that, we don't believe that an offset would be appropriate in this instance because neither of the victims got anything, so there's nothing to offset. And that goes back to really kind of unpack the term diversion. Once Kaczorowski has committed fraud in the first instance, to divert this stream of money that Congress has intentionally set up to help this particular group of people, that is in the heartland of what the government benefit rule was set up to prohibit, and that's why it's in 3F land because Council, I have another question. I know you're also relying on 3F5 and the regulatory approval point, and I get the argument that you had to lie to get approved for the set-aside program, so I understand why you could call that regulatory approval. What's your answer to the reality that that particular sub-provision refers to goods and not services? And this looks like a case about services, and in fact, earlier up, they had one on services. Well, Your Honor, I guess we would point to the Geovinco decision from the Seventh Circuit, which was similar to this. I don't think that decision distinguished goods and services, and that's why I'm asking the question. Well, I guess it's somewhat by analogy. I would agree that what we're talking about is committing regulatory fraud in the first instance. Wait, wait. So you get under three because goods are analogous to services? Is that the point you're making? Well, I guess this is providing a building, so I suppose that the contracting work that was done would be better in the services basket. I agree with that. But the concept is that there was fraud in the inducement in the sense of to qualify to bid on the contract. Yeah, just to make sure we're on the same page, and I don't think the Seventh Circuit decision takes this point on. The first thing is about services, and it talks about fraudulently rendered to the victim by people posing as licensed professionals. That's just not this case. Three arguably could be this case, but it only refers to goods. I mean, I agree with that, Your Honor. I agree that this was a service, and we think that the Giovinco case is instructive in this scenario. But even the Seventh Circuit, I think, was operating somewhat by analogy in that regard. We're here on plein air review on 3F5 at any rate. We think that this court really need not reach that issue because 3F2 clearly applies, and there should be no offset. So we would ask that you remand to the district court for resentencing with a loss amount of $11.8 million with no offset. Thank you. Thank you. Counsel? Thank you, Your Honor. And may it please the court, I'd like to focus on the text of the benefit rule and then move on to the other application notes in the commentary. And if we start with the text of the benefit rule, it gives us two things, right? It gives us a term, government benefit, and then it gives us a list of examples, grants, loans, and entitlement program payments. And our normal rules of statutory construction tell us that that example list restricts the term to things of that type. Well, what do you think of loans, right? I mean, banks give loans every day, right? They're not giving loans in the goodness of their heart. They're giving loans because they expect a return plus interest. So you could, a loan is simply a contract from a bank to a borrower. How is that any different than this private contract between an entity that needs to build something and the builder? Loans generally do operate that way. Government loans operate differently. Government loans, the government doesn't enter the loan marketplace as someone who's trying to maximize their profit on an interest rate. They're offering loans for particular other goals. Isn't that true here, though? I mean, that's also true here. The government, so their goal, they could have been, oh, we're just wanting to spend the least amount of money. Our goal is to have the broadest amount of supply. But instead, they have this other goal of helping veterans. There is a goal here. I wouldn't dispute that. I'd point to the Harris decision out of the Fifth Circuit and look to the primary purpose, not just is there any benefit to the recipient, but what's the primary purpose? In a government loan program, student loans, housing loans, small business loans, they're for the purpose of benefiting the recipient. In even a set aside contract program, the primary, the starting place is what does the government want? Only from there does the government even consider, can this be provided by a small business of any kind? That's in Section 644, which the Harris case cites at page 603. And then can it be provided by a subsection of a small business concern? So the big difference is when the government enters into the loan marketplace, it's for the purpose of benefiting the recipient. When the government enters the contracting marketplace, it starts with what do we want? And in fact, if nobody applies for it, they don't give out any, of course. But the government, when it's contracting, it says we're going to get this one way or another. If no qualified business in a set aside program bids on the contract, then they'll step back and turn to a non-set aside program. Can I ask you a question of who, I take it the victim here. I kind of viewed the victim less as the government and more as the small business entity that would have otherwise, the veteran based entity that would have otherwise received the award. And if you take that view of the victim, does that mean that the offset provision and subdivision E shouldn't apply? Because it says the benefits provided to the victim in here, the benefits provided to the veteran, the alternative veteran organization that would have won this award received none of those benefits. So how does that deduction provision apply in this context? Right. And I've got two provisions, I think, working at cross purposes. Right. Because the first is to even fall into there, we'd have to be talking about a government benefit. So a benefit that comes from the government, not from the other the other victim. And then we wouldn't be offsetting because service wasn't provided to the other victim. Right. So. So right there, I think that doesn't quite work. We conceded below that there was a loss to the other service disabled veteran owned small businesses. We think the proper measure of loss to them is lost profits and not. Why isn't it lost revenues? I mean, that would be one theory that fits the government that. I mean, what they lost is the ability to perform this contract and this revenue infusion into their small business. Would that be any conceit? So if that's the theory, wouldn't it just match how much the government provided kind of one for one? That would match the government's theory of lost revenues, but it doesn't reflect the reality of the service disabled veteran owned small business program, which is once that company is hired. And that happened in this case, they subcontract out to other contractors to provide the particular services. They purchase goods on the open market. None of those things are there's any requirement that it be bought from a small business. And in fact, in these in these instances where they were somewhat specialty hospital based, there's there's a limited number of vendors that you can even buy these things from. So the starting point was certainly a service disabled veteran owned small business. So that was the intent. But once the money flows through it, it goes out. It's not all their money. And the reason I ask that question is it could get tricky to determine the loss. I mean, in this case is a good example of that, that you had to just estimate based on difference in profit margins or whatnot. But you could conceive of a case. What if the veteran is the main employee of the business? So the veteran would be receiving a salary from the business. I would think that that should go into the loss. I guess there's there's an administrability notion to the government's view. It's obvious what the loss is. And if we take your view, it does lead to some difficult questions of how you even go about measuring the loss. Well, I think those those same questions exist in normal contract procurement cases, though, where we have to look at some measure of fair market value and what was the fair market value. And that's that's what the Harris case in the Martin case and Nagel all focused on. What if what if Judge Polster had said, you know, he agrees with your interpretation. This isn't a classic government benefit situation, but he's quite offended by what your client did. And he's actually going to he's going to look at a range that actually is in the range of the 11 million dollar fraud. And he decides that, you know, listen, this whole thing was denied to this other entity. I'm not that worried about the government. I'm really worried about this truly disabled veteran organization. And so I don't know what that would have been, but let's say it's a variance of three, four times. He could have done that. I mean, I gather you would argue that's too high, but he could do that, couldn't he? He could. And you're, of course, right. I would argue it's too high, but I think I let's let's be honest here. I think I'd have a tough time on appeal. Right. Arguing that that was an abuse of discretion to take that account. Now, he didn't take that into account to the degree the government wanted to, but he did take it into account here. We he was in a possible probationary sentence range. Eight to 14 months is the guideline range. But we asked for a probationary sentence. He imposed a guideline sentence, but prison time, 12 months and a day. So he he he did take into account. He explicitly said he took that into account in the sentencing transcript, that there were non-pecuniary harms, frustration of program purpose. I do want to point to one thing that my colleague said, which is that this was a loss to the to the set aside program. It wasn't. There is no set aside program dollar pot that sits out there and is used or isn't used. There's the contracting pot and that's reflected in in section 632 and section 644. There's a contracting pot that the VA has to to. I don't think this helps you much. They want a certain amount of it going to certain groups and it didn't go to that group. That's certainly true. That's certainly true. And I won't dispute that. My point is only that that the primary purpose, again, to the extent that there's a to me, the reason I'm responding to that is I've got in my mind this primary purpose of of the program like the Harris courts and in the Fifth Circuit. Right. And if there was a pool of money that was set aside for only that thing, I think that would be a more difficult argument for me. But the primary purpose is that the government contract for what it wants to contract for and meaning the specs and the and the conditions of the contract, just like the federal acquisition regulations set forth. And that's that's when the government walks into the marketplace. They certainly did also want a service disabled veteran on small business to perform that contract here and they didn't get that. And that's why he's guilty of fraud. We're not we're not contesting here. He's not guilty. But the text of the government benefits rules where we're talking about grant loans and entitlement programs doesn't fit neatly within the. Now the government points in their brief and now again today to the idea of diverting once it's a diversion from the proper recipients. That means it's a government benefit. I don't see where the that line stops from any government payment. Once and in a brief the government focuses to some text in some text in the government benefit, the text that comes after government benefits, e.g. grants loans and entitlement programs, they point to the value of the benefits obtained by unintended recipients. That's not the test right that's what to apply once once you determine it's a government benefit. Because if that was the test, as the government points to in their brief. For example, if someone diverted a government employees salary right through fraud. Well that did not that was diverted from an intended recipient to an unintended recipient, but I don't think anybody here would would would contend that a salary as a government benefit. The same thing would be true in a normal contracting case contract procurement fraud case. The same would be true in an overpayment case where the government just needed to return the money that that that was offered. I think we've discussed, you know, through the question, which is a number of the other points. Well, I would note that, as, as you pointed out earlier that that the, the text of the government benefit will the special rule starts with notwithstanding a. It doesn't say notwithstanding. And I do think that subsection three. I'm sorry. Do you think the Third Circuit approaches the right approach here. I don't say my personal view, but I think the fifth and ninth. I think the Third Circuit kind of punted on whether it's a government benefit right they sort of explicitly did they said either way we're going to end up in the same place because the credits again applies. But obviously, you know, for Mr Kazersky's benefit, we're not going to dispute a resolution the case that relies on the same way that the Third Circuit resolved it where one of the benefit rule applies or not, because the credits against us will applies. I went back to the development of the case law. In this context. The Brothers construction case, or the Fourth Circuit was the first one and it relied on old guidelines. Those guidelines prevent common have the list of examples that we've discussed, it didn't have the credits against last rule. It didn't have the notwithstanding language or didn't have any of that. So, at that point, maybe, you know, the Brothers construction decision is making its best guess at what the commission means, then the Leahy case out of the Seventh Circuit also relies on the old guidelines. Now the Maxwell case of the 11th Circuit, it was decided after the guidelines amendments, but all it says on all these changes is in a footnote in footnote nine in that case where it says, Oh, the new changes did not materially altered the provisions pertinent to this analysis. So their entire discussion of there's this example list of benefits, there's the credits against last rule there's the notwithstanding language. It puts all that aside in a footnote that says it doesn't really change anything. Every circuit Court of Appeals that's decided this issue since then, the fifth, the ninth, the third has rejected the government's argument and and obviously Mr Kazowski believes that that's the right, the right position. The, the new provision that the government raised on appeal. The only thing I want to highlight with that is that's an example of when the Commission does want to specifically exclude the credits against law school right because it says at the end in comment three F sub five with no credit provided for the value of those items or services. It doesn't apply for the reasons that were stated in our brief and and the same questions, Judge Sutton that you raised won't answer them again. I think more answers to that. The only thing I would add, in conclusion, is that the government takes a task and The court's calculation was arbitrary. It was not arbitrary, given the evidence provided the government bears the burden in this context. And they decided not to offer any evidence of fair market value loss profits, they decided to go all or nothing. So the defense offered some evidence of The district court could estimate loss profits. I don't think the government can now really complain that there wasn't enough evidence to justify the district court's decision when it decided not to offer any So for all the reasons we've discussed and in our briefs, we, we asked the court to affirm Mr Kazowski sentence. Thank you, Mr. Grassock. All right, Mr. Ewing. Thank you, Your Honor for brief points in response. First, this was a government benefit. That was the whole point of the fraud is for Kazowski to avail himself. Of this government benefit set aside for specific small businesses owned and controlled by a service disabled veterans. So this was not a garden variety procurement fraud there in a garden variety procurement fraud. Again, there is no special group. That Congress is attempting to assist. I want to talk about the grants loans and entitlement program payments parenthetical that was added in 2001 And I would point you to page 25 of Mr Kazowski's brief where he concedes that loans and grants are not unilateral payments from the government to Whoever they're going to. So that really kind of cuts out the legs of Harris and Martin. The government requires specific performance of grants with a wicker case from this court as an example of that and they require repayments of loans and the cost, the cost case from the Seventh Circuit is an interesting case in that regard. Because that was a fraud in a loan case where the government paid out about $174,000 at which point they figured out the fraud. The loan was for $200,000 and the loss amount for guidelines purposes was 200,000 And the reason was, even though the government had not paid out the rest. The reason was, is because of this diversionary idea. The loan was supposed to go to a particular group of people who had been damaged, you know, by a natural disaster. And it went to someone else. And so it's this diversionary point which caused the loss amount to be the $200,000 second point. The government contracts for buildings, but here they weren't just simply contracting for a building. They were contracting for a building built by a service disabled veteran owned small business. If they wanted to just contract for a building, they could have simply put it out to the lowest responsible bidder. That's not what they did. Third point, the notwithstanding 3A piece, which is what 3F says, notwithstanding 3A. Again, two responses to that. One, if you read the guidelines, the most logical rationale is that 3A through E modify the general rule. And then the special rules, again, are for times when the pecuniary harm is not the right yardstick for the loss. Because loss is supposed to be a measure of the severity of the fraud. And the second point is that the victim, neither of the victims in this case, got a dime from Mr. Kaczorski. And fourth point, just go back briefly to 3F5. Your Honor, we were talking about goods versus services. I would also point to the first sub portion of that, which talks about services fraudulently rendered to the victim. Granted, it speaks to licensed professionals, but that would also be a strong analogy to what happened here. I see I've got about 20 seconds left. Subject to your questions, we would ask that you reverse and remand for resentencing with directions to apply the government benefit rule with no offset. All right. Thank you. Thanks to both of you for your helpful briefs and arguments. Much needed in this tricky case. So thank you very much. Case will be submitted and the clerk can call the next case. Thank you.